# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                     No. CR 11-2990 JB

EFREN VALENCIA-MONTOYA,
JUAN RECOBO, and
EULALIO SUAREZ-CABEZA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Juan Recobo's Motion in Limine to Exclude Evidence Pursuant to Rule 404(b), filed August 27, 2012 (Doc 80) ("Motion in Limine"); and (ii) Defendant Juan Recobo's Motion in Limine to Exclude Evidence, filed September 3, 2012 (Doc. 82)("Second Motion in Limine"). The Court held a hearing on September 6, 2012. At the hearing, Defendant Eulalio Suarez-Cabeza joined both motions. See Transcript of Hearing at 3:3-5 (taken September 6, 2012)(Farkas)("Tr.").[1]  The primary issue is whether, under rule 404(b) of the Federal Rules of Evidence, the Court should exclude evidence relating to Defendant Juan Recobo's and Suarez-Cabeza's involvement in a methamphetamine purchase that took place on the day Plaintiff United States of American contends that the charged conspiracy began.  The Court will grant in part and deny in part Recobo and Suarez Cabeza's motions in limine.  The evidence of the November 7, 2011, methamphetamine purchase is not a "crime, wrong, or other act" as used in rule 404(b), and is, rather, evidence of the crime with which Recobo and Suarez-Cabeza are charged in

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Count I; the Court will admit that evidence.  The Court will, however, grant Recobo and Suarez-Cabeza's request in the Second Motion in Limine to exclude evidence of other events, aside from the November 7, 2011, events. The United States may not introduce any of the following: (i) statements obtained by DEA agents relating to a December 10, 2010 methamphetamine transaction; (ii) a traffic stop involving Recobo on August 17, 2011; (iii) the execution of a search warrant on December 15, 2011; and (iv) the execution of a search warrant on December 16, 2011.

## FACTUAL BACKGROUND

On December 10, 2010, agents out of Kansas received information that a large shipment of methamphetamine was being moved by a known drug dealer, Rene Reyna, into Amherst, Virginia. See Second Motion in Limine at 2.  When a Drug Enforcement Administration ("DEA") confidential informant contacted Reyna to purchase methamphetamine, Reyna coordinated delivery of the drugs through his sister.  See Id.  Reyna had picked up two pounds of methamphetamine that Juan Recobo fronted to him.  See Id.  Recobo was never charged in connection with these events. See Id.

Recobo was stopped on August 17, 2011, by police officers for a traffic infraction and, upon a search of his vehicle, was found to be in possession of $17,882.00, which he denied claim to, and $1,301, which was released to him.  See Second Motion in Limine at 3.  Recobo was not charged in connection with this stop.  See Second Motion in Limine at 3.

On November 7, 2011, DEA agents did a "controlled purchase" of two ounces of methamphetamine from Antonio Medina-Alvarez in Dodge City, Kansas. Second Motion in Limine at 3.  After completion of the purchase, the DEA performed an investigation into the telephone numbers of all of the phone numbers that Medina-Alvarez called in order to procure the methamphetamine, finding that Medina Alvarez called only the DEA agent's number and two others

during that time.  See Id. at 2.

On November 13, 2011, New Mexico State Police ("NMSP") officers pulled over a truck and, after a canine was deployed upon the vehicle, found two packages of methamphetamine hidden in compartments within the truck.  See Motion in Limine at 1-2.  The NMSP officer, along with a special agent from the Drug Enforcement Administration ("DEA"), placed the driver of the truck under arrest.  See id. at 2.  Because the driver of the truck was en route to deliver the methamphetamine to a "Juan LNU" the officer had the truck driver place a call to the intended recipients and continue with the delivery as planned.  See id.  Outside of Santa Rosa, New Mexico, Defendant Juan Recobo and Suarez-Cabeza met the truck driver.  See id. at 4. Upon watching all three of the men walk around the truck, the NMSP officer and DEA agent observed: (i) the truck driver remove the panel where the drugs were hidden; (ii) Recobo adjusting his jacket as he walked back to his vehicle, and (iii) the truck driver and Suarez-Cabeza walking back to Recobo and Suarez-Cabeza's vehicle with the methamphetamine from the driver's side compartment.  See id. at 4-5.

As Suarez-Cabeza and the truck driver walked to the vehicle with Recobo, "agents in police markings and identifying themselves as police" took Suarez-Cabeza into custody.   Motion in Limine at 5. NMSP officers stopped Recobo and took him into custody as he was driving away from the parking lot.  See id. at 5. In the process of arresting Recobo and Suarez-Cabeza, "[a]gents found a cellular phone on Mr. Suarez-Cabeza matching the number called by [the truck driver]," and two cellular telephones were found in the console area of the vehicle that Recobo was driving, "one of which matched the number that [the truck driver] called to reach 'Juan LNU.'" Id. at 5.  The officers found, in Recobo's vehicle, his checkbook, listing his address in Dodge City, Kansas.  See Id. at 5.

The cellular telephone taken from Suarez-Cabeza, and one of the two cellular telephones

found in Recobo's vehicle, matched the only two numbers called on November 7, 2011 in an undercover DEA methamphetamine purchase by Mr. Medina-Alvarez, a known drug dealer arrested in Dodge City, Kansas. <u>See</u> United States' Response to Defendant Juan Recobo's Motion in Limine, filed on September 9, 2012 (Doc. 90)("MIL Response"). The cellular telephone found in Recobo's car bearing the number that Medina-Alvarez called on November 7, 2011, was registered to an "Alex Smith." <u>See</u> Second Motion in Limine at 3.

On November 14, 2011, the DEA executed a State of Kansas warrant for the address found on the checkbook and inside found, among other things, "[t]wo (2) plastic jars of methylsulfonylmethane (MSM)[2] and a receipt for their purchase. . . ." Motion in Limine at 5. On December 16, 2011, a Kansas search warrant was executed for the apartment at 1001 Avenue C, Apartment D, Dodge City, Kansas, but nothing of note or of import to this case was discovered. <u>See</u> Second Motion in Limine at 4. Then, on December 15, 2011, a second search warrant was executed for the house at 403 Military, Dodge City, Kansas, but again, nothing of note was found. <u>See Id.</u>

## PROCEDURAL BACKGROUND

On December 1, 2011, Defendants Recobo and Suarez-Cabeza were indicted on two counts: (i) Count I for Conspiracy in violation of 21 U.S.C. § 846 - charging that Valencia-Montoya, Recobo, and Suarez-Cabeza conspired with each other "[o]n or about November 13, 2011 . . ."; and (ii) Count II for Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(a). <u>See</u>

---

[2]Methylsulfonylmethane, or MSM, is a veterinary supplement used to relieve joint pain in horses, and is a substance commonly used as a cutting agent in the production of methamphetamine. <u>See</u> <u>United States v. Gutierrez-Aguiniga</u>, 133 F. App'x 460, 462 (10th Cir. 2005).

Indictment (Doc. 21)(filed August 23, 2011).  On May 8, 2012, the Superceding Indictment was filed, superseding the first charge of conspiracy to charge that Valencia-Montoya, Recobo, and Suarez-Cabeza conspired with each other instead "[f]rom on or about November 7, 2011, to November 13, 2011 . . . ." Doc. 57.

Recobo filed his Motion in Limine on August 27, 2012, moving "the Court for an order excluding any evidence that the Government intents to offer that is contrary to Rule 404(b) of the Federal Rules of Evidence."  Motion in Limine at 1.  Recobo and Suarez-Cabeza assert:

> [T]he government would like to argue that if some unwitting informant made calls to a telephone that was supposed to be Mr. Recobo's (even though it was actually registered to an Alex Smith) on November 7, 2011, which resulted in the sale of methamphetamine on that date, then Mr. Recobo definitely possessed and conspired to possess the methamphetamine that [the truck driver] was in possession of on November 13, 2011.

Motion in Limine at 8.  Recobo and Suarez-Cabeza contend that introduction of these "uncharged illegal acts," Motion in Limine at 6, resulting from the "controlled buy. . . [are] inadmissible under Rule 404(b) as more prejudicial than probative."  Motion in Limine at 10.  At the hearing on September 6, 2012, after receiving the United States' MIL Response, Recobo clarified that the Motion in Limine implicitly includes a 403 argument regarding the events of November 7, 2011. See Tr. at 3:21-6:3 (Kennedy, Court).

On September 3, 2012, Recobo filed Defendant Juan Recobo's Motion in Limine to Exclude Evidence, seeking to exclude evidence under rule 403. See Second Motion in Limine at 1.  Recobo and Suarez-Cabeza include within the Second Motion in Limine request that the Court exclude evidence in addition to that relevant to the November 7, 2011, methamphetamine purchase, under rules 401, 402, 611(a) and 801(a). See Second Motion in Limine at 1.  The evidence they seek to exclude includes: (i) statements obtained by DEA agents relating to a December 10, 2010

methamphetamine transaction, see Second Motion in Limine at 2; (ii) a traffic stop involving Recobo on August 17, 2011; (iii) the events of November 7, 2011; (iv) the execution of a search warrant on December 15, 2011; and (v) the execution of a search warrant on December 16, 2011. The United State filed its MIL Response on September 6, 2012. See Doc. 90. The United States does not seek to offer any of the contested evidence, except for evidence of Recobo and Suarez-Cabeza's "involvement in an undercover methamphetamine purchase in Dodge City, Kansas, within the indicted date range for this case." MIL Response at 2. The United States, thus, does not oppose the exclusion of the other evidence Recobo and Suarez-Cabeza seek to exclude, including: (i) the December 10, 2010 statements, (ii) the August 17, 2011, traffic stop; and (iii) the December 15, 2011, and December 16, 2011, search warrants executed. See MIL Response at 1, 3-4. The United States argues that the events of November 7, 2011, and the cellular telephones found on Suarez-Cabeza and in Recobo's vehicle, are substantive evidence, being offered to prove their involvement in the conspiracy with which they are charged in Count I. See MIL Response at 2. In regards to Recobo's and Suarez-Cabeza's rule 403 argument, the United States contends that the evidence is "far more probative than it is prejudicial, because it incites no emotional reaction for anyone but is extremely precise evidence connecting Recobo and Suarez-Cabeza to the conspiracy existing on November 7, 2011." MIL Response at 2.

At the hearing on September 6, 2012, Recobo and Suarez-Cabeza asserted that the basis of their 404(b) argument is that the Court should exclude the evidence of the November 7, 2011, operation and the related evidence of the telephone calls under 404(b) as evidence of another crime or bad act, because it is a distinct conspiracy from the conspiracy on November 14, 2011. See Tr. at 5:8-24 (Kennedy). The Court asked them whether the evidence connecting Recobo and Suarez-Cabeza to the November 7, 2011, operation was res gestae evidence, being used to "establish the

conspiracy" with which they are charged in Count I, and whether the fact that the telephone was registered to someone else went more to weight than admissibility. Tr. at 4:15-5:1 (Court). They contended that the United States does not "have proof" that the conspiracy spanned from November 7 through November 13, 2011, and "to put those two [events] together" into one conspiracy is unfairly prejudicial as, the evidence provokes an emotional response, because "a jury wants to make that connection because the evidence is presented to them, and so I'd ask you to look at that under 403, as well." Tr. at 5:8-6:12, 11:7-11 (Kennedy, Court). They also requested that the Court exclude this proposed evidence, because the United States should have moved to offer this proposed evidence under the scheduling order for this case. See Tr. at 7:12-8:14 (Kennedy, Court). The Court asked, even assuming that rule 404(b) applies to the evidence that the United States intends to offer, whether the United States' failure to move for its admission before their motions prejudiced Recobo and Suarez-Cabeza in any way. Tr. at 8:20-9:4 (Court, Kennedy). While still contending that the United States failed to comply with the scheduling order, they conceded that the United States' conduct had not prejudiced them. See 9:5-17 (Kennedy, Court).

The Court then asked the United States how it will prove the November 7, 2011, events and the November 13, 2011, events are linked, and how it will provide prima facie evidence for the existence of a conspiracy and Recobo and Suarez-Cabeza's participation in the conspiracy. See Tr. at 12:17-13:7 (Court, Pena). The United States asserted that the undercover DEA agent from the November 7, 2011, methamphetamine purchase will testify to the existence of the conspiracy, and theat the United States will lay a sufficient foundation for the testimony. See Tr. at 12:20-13:19 (Pena, Court). The United States stated that it will have sufficient evidence for a prima facie case of conspiracy, see Tr. at 16:2-9 (Court, Pena), including testimony by the undercover agent establishing that, when he asked Medina-Alvarez said: "[S]ure I'll get in touch with my guy . . . he

immediately called the cell phone later found in [the] possession of Mr. Recobo." Tr. at 14:21-25 (Pena).  In regards to Recobo and Suarez-Cabeza's 404(b) argument, the United States asserted that the evidence is not something extrinsic to and apart from the criminal conduct, but rather is res gestae evidence as it is intrinsic to the crime of the conspiracy.  Tr. at 16:15-24 (Pena).

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in original).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad.  See United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States recently noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule

403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 453 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).  The Tenth Circuit held in United States v. Caraway that the potential for unfair prejudice did not substantially outweigh the probative value of the testimony concerning a book found on the defendant's property, "found near someone else's belongings," containing instructions and illustrations for making explosive devices, where the defendant was on trial for producing a bomb that exploded, injuring a thirteen-year-old boy.  534 F.3d at 1301.

## LAW REGARDING APPLICATION OF RULE 404(b)

Rule 404(b) of the Federal Rules of Evidence provides:

**(b)**      **Crimes, Wrongs, or Other Acts.**

      **(1)**      **Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2)** **Permitted Uses; Notice in a Criminal Case.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

**(B)** do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  Rule 404(b) states that evidence of other crimes or wrongs may not be introduced against a person to show that, in the case at hand, he or she acted in conformity with that prior behavior.   The same evidence, however, may be admissible for other purposes.   Permissible purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.   See Fed. R. Evid. 404(b).  The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b).   See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  The United States Court of Appeals for the Tenth Circuit has consistently applied that test:

To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)).   See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of the defendant's character.  See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

The Tenth Circuit has stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom."  United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)).  "[A] broad statement merely invoking or restating Rule 404(b) will not suffice."  United States v. Youts, 229 F.3d at 1317.

Uncharged, unrelated crimes or bad acts may be probative to show motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time.  See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged").  This similarity may be shown through "physical

-11-

similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'"  United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978).  See United States v. Bonnett, 877 F.2d at 1461.

The Tenth Circuit in United States v. Johnson, 42 F.3d 1312 (10th Cir. 1994), explained that rule 404(b) does not apply to uncharged acts that are part of the conduct with which a defendant is charged:

> Rule 404(b) only applies to evidence of acts extrinsic to the charged crime. An uncharged act may not be extrinsic if: (1) it was part of the scheme for which a defendant is being prosecuted . . . or (2) it was "inextricably intertwined" with the charged crime such that a witness' testimony "would have been confusing and incomplete without the prior act."

United States v. Johnson, 42 F.3d at 1316 (internal citations omitted).

## LAW REGARDING RES GESTAE

Evidence is admissible "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae."  United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(quoting United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980)(internal quotations omitted).  The Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[ ] charged in the indictment."  United States v. Kimball, 73 F.3d at 272 (alteration in original)(internal quotations and citations omitted).  The Court has defined res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense."  United States v. Ganadonegro, No. CR 09-312 JB, 2011 WL 3957549, at *4 (D.N.M. Aug. 30, 2011)(Browning, J.)(quoting United States v. Hardy, 228 F.3d

-12-

745, 748 (6th Cir. 2000)).  See United States v. McVeigh, 153 F.3d 1166, 1203 (10th Cir.

1999)(describing res gestae evidence as "inextricably intertwined with proper evidence" (internal

quotations omitted)).  As the Sixth Circuit in United States v. Hardy explained,

> Proper background evidence has a causal, temporal or spatial connection with the
> charged offense.  Typically, such evidence is a prelude to the charged offense, is
> directly probative of the charged offense, arises from the same events as the charged
> offense, forms an integral part of a witness's testimony, or completes the story of the
> charged offense.

United States v. Hardy, 228 F.3d at 748 (citation omitted).  Conduct that arises from the same events

as the charged conduct or completes the story of the charged offenses is res gestae.  See United

States v. Fred, No. CR 05-801 JB, 2006 WL 4079618, *7 (D.N.M. Dec. 1, 2006)(Browning,

J.)(finding two indictments of sexual abuse alleged to have occurred two weeks before the dates of

the conduct with which the defendant was charged was not res gestae, because the incidents did not

"arise from the same events as the charged offense," and did not "complete the story of the charged

offenses"). See also Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2011 WL 6739166, *8-9 (D.N.M.

Nov. 1, 2011)(Browning, J.)(finding that evidence of plaintiff's son spitting on police officers and

breaking the window of the police car res gestae of plaintiff's arrest for disorderly conduct, because

it "places [the plaintiff's] conduct in context").

## LAW REGARDING CONSPIRACY

The Tenth Circuit has outlined what the government must prove to establish the existence

of a conspiracy:

> To prove a conspiracy, the government must show: (1) that two or more
> people agreed to violate the law[,] (2) that the defendant knew at least the
> essential objectives of the conspiracy, (3) that the defendant knowingly and
> voluntarily became a part of it, and (4) that the alleged co-conspirators were
> interdependent. . . .  A single conspiracy does not exist solely because many
> individuals deal with a common central player.  What is required is a shared
> single criminal objective, not just similar or parallel objectives between
> similarly situated people.  On the other hand, a defendant need not have

-13-

> knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy. The government need only prove by direct or circumstantial evidence that the defendant knew at least the essential objectives of the conspiracy and the defendant knowingly and voluntarily became part of it.

United States v. Small, 423 F.3d 1164, 1182-83 (10th Cir. 2005)(quoting United States v. Evans, 970 F.2d 663, 668-671 (10th Cir. 1992), and United States v. Mendoza-Solgado, 964 F.2d 993, 1005 (10th Cir. 1992))(internal citations, quotations, and emphasis omitted). Conspiracy is not a collection of various separate and distinct events, but rather is "the prototypical continuing offense." United States v. Acosta-Gallardo, 656 F.3d 1109, 1122 (10th Cir. 2011)(quoting United States v. Jaynes, 75 F.3d 1493, 1505 (10th Cir. 1996)).

In the case of drug trafficking cases involving "large quantities of narcotics," coconspirators are liable for the acts of all of the coconspirators, including others unknown to them. United States v. Small, 423 F.3d at 1183 (quoting United States v. Watson, 594 F.2d 1330, 1340 (10th Cir.1979))("Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know").

## LAW REGARDING COCONSPIRATOR STATEMENTS

The Federal Rules of Evidence define hearsay as: "a statement that: (i) the declarant does not make while testifying at trial or hearing; and (ii) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)). Hearsay evidence is not admissible. See Fed. R. Evid. 802. Some statements that are not made while testifying in court, however, are specifically exempted from the hearsay definition and categorized as not hearsay. See Fed. R. Evid. 801(d). Among those categories are statements "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Consequently, if coconspirator

-14-

statements made during and in furtherance of the conspiracy are relevant, they are admissible.  See
Fed. R. Evid. 402 ("All relevant evidence is admissible.").

To admit coconspirator statements as non-hearsay pursuant to rule 801(d)(2)(E), the United
States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the
declarant and the defendant were members of that conspiracy; and (iii)  the statements that the
United States seeks to admit were made during the course and in furtherance of the conspiracy.  See
Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1081 (10th Cir. 2006)(citing United
States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996)).  The Court may consider the
coconspirator statements themselves, as well as independent evidence, in determining whether the
conspiracy existed.  See Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d at 1081.

In determining the admissibility of coconspirator statements, "[t]he strongly preferred order
of proof" is for the district court to hold a hearing "outside the presence of the jury to determine by
a preponderance of the evidence the existence of a predicate conspiracy."  See United States v.
Urena, 27 F.3d at 1487, 1491 (10th Cir. 1994).  A defendant does not possess a right to a pretrial
hearing on admissibility of coconspirators statements; however, "a district court can only admit
coconspirator statements if it holds a James hearing or conditions admission on forthcoming proof
of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472
F.3d 1267, at 1273 (10th Cir. 2007)(quoting United States v. Owens, 70 F.3d 1118, 1123 (10th Cir.
1995).

## ANALYSIS

The Court will deny Recobo and Suarez-Cabeza's requests to exclude evidence of their
involvement with the November 7, 2011, undercover methamphetamine purchase.  Because the
evidence of the November 7, 2011 events and the phone calls to the cellular telephones found in the

possession of Recobo and Suarez-Cabeza is res gestae for the conspiracy charge in Count I, introduction of the evidence does not violate rule 404(b) of the Federal Rules of Evidence.  Because the November 7, 2011 evidence is relevant, and because the risk of unfair prejudice in presenting this evidence to the jury does not substantially outweigh the evidence's probative value, the introduction of the evidence does not violate Rule 403 of the Federal Rules of Evidence.

**I.      THE EVIDENCE RELATING TO RECOBO AND SUAREZ-CABEZA'S INVOLVEMENT IN THE NOVEMBER 7, 2011, METHAMPHETAMINE PURCHASE IS RES GESTAE EVIDENCE OF THE DRUG TRAFFICKING CONSPIRACY AND DOES NOT VIOLATE RULE 404(b).**

The United States contends that, to prove that a conspiracy to distribute methamphetamine existed between Recobo and Suarez-Cabeza from November 7, 2011, to November 13, 2011, as charged in Count I of the indictment, the United States must prove that there was an agreement between them to distribute methamphetamine on or before November 7, 2011.  The United States seeks to introduce evidence that the cellular telephones found in Recobo and Suarez-Cabeza's car when they were arrested for distribution of methamphetamine on November 13, 2011, matched the telephone numbers that were called by Medina-Alvarez on November 7, 2011, during an undercover methamphetamine purchase.  Because this evidence is therefore part of the scheme for which Recobo and Suarez-Cabeza are being charged, and thus not extrinsic evidence, rule 404(b) does not apply to the events of November 7, 2011.  See United States v. Johnson, 42 F.3d 1312, 1316 (10th Cir. 1994).

These events are res gestae, rather, because they are inextricably intertwined with the substance of the case to the point that they are part and parcel of the proof of the crime.  See United States v. Kimball, 73 F.3d at 272.  The evidence that the United States seeks to introduce regarding Recobo and Suarez-Cabeza's involvement in an undercover methamphetamine purchase on

-16-

November 7, 2011 is res gestae evidence because it is conduct that arises from the same events as the conspiracy charge against them spanning November 7, 2011, through November 13, 2011.  It is not evidence of a prior incarceration.  See United States v. Kimball, 73 F.3d 269.  It is not evidence of similar conduct taking place weeks before the charged crime.  See United States v. Fred, No. CR 05-801 JB, 2006 WL 4079618, at *7.  Because the conduct took place on the day the conspiracy charge is alleged to have begun, it is not even a prior bad act.  The evidence that the only two telephone numbers Medina-Alvarez called in the course of an undercover methamphetamine purchase on November 7, 2011, matched the numbers of cellular telephones found in Recobo and Suarez-Cabeza's possession when they were arrested in the course of a methamphetamine sale six days later, is certainly a bad act, but, more importantly, it is evidence of the crime with which they are charged in this case and thus "is directly probative of the charged offense."  United States v. Hardy, 228 F.3d at 748.  The evidence that the telephones found on Recobo and Suarez-Cabeza on November 13, 2011, are the same telephones as Medina-Alvarez called on November 7, 2011, is "direct or circumstantial" evidence of the conspiracy.  See United States v. Smalls, 423 F.3d 1163, 1182-83 (10th Cir. 2005).  It is evidence that "two or more people agreed to violate the law" through trafficking drugs on or before that day, and that Recobo and Suarez-Cabeza both knew that the objective of the conspiracy was to traffic methamphetamine from Arizona to Kansas for its distribution. United States v. Smalls, 423 F.3d at 1182-83.

It is true, as Recobo and Suarez-Cabeza contend, that the in the scheduling order  required rule 404(b) motions to be submitted twenty-one days before the trial date.  See Proposed Scheduling Order No. 1, filed May 11, 2012 (Doc. 63)("The parties agree to the following trial deadline . . . [r]ule 404(b) motions . . . 21 days before the trial setting").  Because the evidence linking them to the events of the November 7, 2011, methamphetamine purchase, is res gestae, to which rule 404(b)

does not apply, the United States did not violate the scheduling order by not providing notice to

Recobo and Suarez-Cabeza of its intent to offer the evidence until September 11, 2012.

## II.   THE EVIDENCE RELATING TO RECOBO AND SUAREZ-CABEZA'S INVOLVEMENT IN THE NOVEMBER 7, 2011, METHAMPHETAMINE PURCHASE IS RELEVANT UNDER RULE 401 AND DOES NOT VIOLATE RULE 403.

To exclude relevant evidence under rule 403 is "an extraordinary remedy and should be used

sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010). Rule 403 counsels that the

court should exclude relevant evidence only if "its probative value is substantially outweighed by

a danger of . . . unfair prejudice . . . ." Fed. R. Evid. 403 (emphasis added). Recobo and Suarez-

Cabeza argue that the Court should exclude evidence of their involvement in the November 7, 2011,

methamphetamine purchase, because the telephone in Recobo's possession is registered to someone

else, the purchases involved different actors,[3] and combining the presentation of the events of the

two different days provokes an emotional response in the jury because the jury wants to make the

connection of the events. The evidence is prejudicial in that it damages their case, but this evidence

is probative as intrinsic evidence of the existence of the conspiracy by linking the telephones used

in both methamphetamine transactions to Recobo and Suarez-Cabeza. "[I]t is only unfair prejudice,

substantially outweighing probative value, which permits exclusion of relevant matter [under rule

403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006). Because the probative value

of this evidence in establishing the existence of the conspiracy charged in Count I of the indictment

---

[3]That the November 7, 2011, methamphetamine purchase involved Medina-Alvarez, as opposed to Efren Valencia-Montoya, does not bear on whether Recobo and Suarez-Cabeza are guilty of conspiring with each other, and/or with Medina Alvarez or Valencia-Montoya, in these two events as charged. See Tenth Circuit Pattern Jury Instructions Criminal § 1.19, at 33 (2011)("You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. . . . The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged").

outweighs any possible prejudice in allowing its introduction, its introduction does not violate rule 403.

For these reasons, and the reasons stated on the record at the hearing, the Court will deny both of Recobo and Suarez-Cabeza's motions in limine. Because this evidence is not 404(b) evidence,[4] the Court will not include a limiting instruction for the evidence. Moreover, even if the evidence was being admitted under rule 404(b), the United States seems to be offering it for a proper purpose,[5] because the evidence is probative of Recobo and Suarez-Cabeza's "plan" to distribute methamphetamine and their "knowledge" of the drug being transported from Arizona to Kansas. See Fed. R. Evid. 404(b)(2).

**IT IS ORDERED** that The United States may present all admissible evidence related to the November 7, 2011, undercover methamphetamine purchase. Defendant Juan Recobo's Motion in Limine to Exclude Evidence Pursuant to Rule 404(b), filed August 27, 2012 (Doc 80), and Defendant Juan Recobo's Motion in Limine to Exclude Evidence, filed September 3, 2012 (Doc. 82), are granted in part and denied in part. The United States may not, however, introduce any of the following evidence: (i) statements obtained by DEA agents relating to a December 10, 2010 methamphetamine transaction, (ii) a traffic stop involving Recobo on August 17, 2011; (iii) the

---

[4]While lawyers and courts frequently use the phrase "404(b) evidence," there is, to be accurate, no such thing as "rule 404(b) evidence." Rule 404(b), rather, is a rule that allows the admission of relevant evidence that is not offered for an improper purpose. See U.S. v. Tan, 254 F.3d 1204, 1208 (10th Cir. 2001)(quoting United States v. Van Metre, 150 F.3d 339, 349 (5th Cir. 1998)("Rule 404(b) is considered to be 'an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition'").

[5]This case is not one presenting the evidence to the jury for the purposes of leading to "the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." Wilson v. Jara, No. Civ. 10-0797 JB/WPL, 2011 WL 6739166, *5 (D.N.M. Dec. 1, 2011).

execution of a search warrant on December 15, 2011; and (iv) the execution of a search warrant on

December 16, 2011.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J.  Gonzales
  United States Attorney
Jon K. Stanford
Jeremy Pena
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

James Baiamonte
Albuquerque, New Mexico

      *Attorney Defendant Efren Valencia-Montoya*

Christin K. Kennedy
Albuquerque, New Mexico

      *Attorney Defendant Juan Recobo*

Todd Farkas
Davis Miles McGuire Garnder, PLLC
Albuquerque, New Mexico

      *Attorney for Defendant Eulalio Suarez-Cabeza*